**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| UNITED STATE OF AMERICA FOR THE USE OF CULLION EXCAVATING CORP.<br><br>Plaintiff,<br><br>v.<br><br>WHITE & CARR, INC. and THE HANOVER INSURANCE COMPANY,<br><br>Defendants | CIVIL ACTION NO. 06-341-S |

**THE HANOVER INSURANCE COMPANY'S**
**STATEMENT OF UNDISPUTED FACTS**

Defendant The Hanover Insurance Company ("Hanover") submits this Statement of Undisputed Facts in support of its Motion for Summary Judgment.[1]

1. This case is governed by the Miller Act, 40 U.S.C. 1313 et seq. Complaint ¶ 4 (attached as Exhibit A to the accompanying Affidavit of Gregory S. Arnold, Esq. in Support of The Hanover Insurance Company's Motion for Summary Judgment ("Arnold Affidavit")).

2. On or about August 7, 2003, defendant White & Carr, Inc. ("White") entered into a contract, number 501813C031, with the U.S. Department of Interior, Fish and Wildlife Service ("U.S. F&W") for construction and/or improvement of the Administration/Visitor's Facility at the Rhode Island National Wildlife Refuge Complex in Charlestown, Rhode Island (hereinafter "Prime Contract"). Complaint ¶ 6; Answer ¶ 6 (attached as Exhibit B to the Arnold Affidavit).

[1] Hanover states the following facts only for purposes of its Motion for Summary Judgment and accompanying memoranda.

3. Pursuant to the Miller Act, White was required to obtain a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the [Prime Contract] . . . ." 40 U.S.C. § 3131(b)(2); Complaint ¶ 7.

4. On or about August 12, 2003, Hanover, as surety, issued a payment bond, number 1701069 ("Payment Bond"), pursuant to the Miller Act on behalf of White, as principal, for persons "furnishing labor, material or both in the prosecution of the work provided for in the contract identified above" (the Prime Contract). See Payment Bond, at "Conditions" (attached as Exhibit C to the Arnold Affidavit); see also Complaint ¶ 7.

5. The contract identified in the Payment Bond is the Prime Contract, contract number 501813C031. Payment Bond; see also Complaint ¶ 7.

6. On or about November 19, 2003, White entered into a Subcontract with plaintiff Cullion Excavating Corp. ("Cullion") whereby Cullion agreed to perform a certain portion of the work required by the Prime Contract. Complaint ¶ 8.

7. On April 8, 2005, the U.S. F&W terminated the Prime Contract, citing White's "failure to make progress" and failure to provide "payments to [White's] subcontractors for work they have completed." Notice of Termination for Default (attached as Exhibit D to the Arnold Affidavit).

8. After the Prime Contract was terminated, the U.S. F&W entered into a subsequent contract with Cullion, on May 3, 2005, to perform remaining work on the Administration/ Visitor's Facility at the Rhode Island National Wildlife Refuge Complex in Charlestown, Rhode Island (hereinafter "Re-Procurement Contract"). Re-Procurement Contract (attached as Exhibit E to the Arnold Affidavit).

9. The Re-Procurement Contract, entitled "Order for Supplies or Services," is a separate contract from the Prime Contract, and it is identified by the U.S. F&W as contract number 501815M158. Re-Procurement Contract.

10. The Re-Procurement Contract states that "[t]his contract is a negotiated agreement based on remaining work under U.S. Fish and Wildlife Service Contract # 501813C031. The prime contractor (White & Carr, Inc.) has been Terminated for Default." Re-Procurement Contract.

11. Hanover did not issue a payment bond for the Re-Procurement Contract. Compare Re-Procurement Contract with Payment Bond.

12. On April 20, 2005, Cullion provided Hanover with notice of its intent to file a claim under the Payment Bond for payments it should have received from White for its work under the Prime Contract pursuant to its Subcontract with White.

13. Hanover and its consultant, GreyHawk North America LLC, conducted an investigation into Cullion's claim and determined that Cullion was owed $13,497.60 under the Payment Bond for its work under the Prime Contract pursuant to its Subcontract with White, and offered this amount to Cullion on December 1, 2005.[2] Offer of Final Settlement (attached as Exhibit F to the Arnold Affidavit).

14. Cullion did not accept Hanover's offer and filed the instant Complaint on July 26, 2006, alleging a sole claim pursuant to the Miller Act. See Complaint.

[2] While there may be factual disputes over the amount that Cullion was owed under the Payment Bond, there is no genuine dispute that Hanover/GreyHawk calculated the amount at $13,497.60 and offered this to Cullion in December 2005.

Respectfully Submitted,

THE HANOVER INSURANCE COMPANY

By its Attorneys,

/s/ Carl E. Fumarola

Carl E. Fumarola #6980
Cetrulo & Capone LLP
The Heritage Building
321 South Main Street
Providence, RI 02903
Tel: (401) 274-7850
Fax: (401) 274-9670
Email: cfumarola@cetcap.com

Of Counsel:

Bert J. Capone, Esq.
Cetrulo & Capone LLP
Two Seaport Lane, 10th Floor
Boston, MA 02210
Tel: 617-217-5500
Fax: 617-217-5200

Dated September 14, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of September 2007, I caused a true copy of the foregoing document to be served by operation of the Court's Electronic Cases Filing ("ECF") System to those individuals designated for electronic service by the ECF System in this case and by first-class mail to the following:

Andrew S. Ullucci # 7233
Christopher C. Whitney #3261
Little Medeiros Kinder Bulman & Whitney, P.C.
72 Pine Street
Providence, Rhode Island 02903
(401) 727-8080
(401) 521-3555 (facsimile)
Email: aullucci@lmkbw.com

White & Carr, Inc.
c/o C. Cole, Esq.
11 Broadway, 11th Floor
New York, NY 10005
(via First Class Mail)

/s/ Carl E. Fumarola
Carl E. Fumarola