# Exhibit F

GREYHAWK®
North America

CONSTRUCTION MANAGERS & CONSULTANTS

January 4, 2006

*Sent via regular mail*

Mark Hoffer, Project Manager
**Cullion Excavating, Corp.**
P.O. Box 8965
Cranston, RI 02920

| | | |
|---|---|---|
| Re: | **Principal:** | **White & Carr, Incorporated** |
| | **Obligee:** | **US Department of Interior** |
| | **Project:** | **Administration/Visitors Center Rhode Island National Wildlife Refuge Complex** |
| | **Surety:** | **The Hanover Insurance Co.** |
| | **Bond No.:** | **1701069** |
| | **Claim No.:** | **23666** |

**Subject: Offer of Final Settlement - Final Payment & Release**

Dear Mr. Hoffer:

As you are aware, GREYHAWK North America, L.L.C. (GREYHAWK) has been selected as an independent consultant by **The Hanover Co.**, the Surety for **White & Carr, Inc.**, to conduct an investigation, disburse certain contract funds earned on the referenced project and to review payment bond claims for merit.

On December 1, 2005, pursuant to our previous correspondence via the Vendor/ Subcontractor Recap Form, your subsequent response, and a review of the available records, GREYHAWK proposed a settlement in the amount of $13,497.60 including retainage. The amount of the payment due is reflected on the enclosed *Final Release, Warranty and Assignment*, ("Release") which must be executed and returned prior to the disbursement indicated.

When we notified of our determination on December 1st, you submitted additional documentation that you believed would prove that an additional amount was due. We reviewed the additional documentation and sought verification from Chris Murphy, Contracting Officer for Fish & Wildlife ("F&W") on this project.

Mr. Murphy responded in writing on December 23, 2005 to our inquiry for verification of the scope of work that F&W re-procured Cullion to perform. His response was that F&W re-procured Cullion to perform the "remaining work under U.S. fish and Wildlife

GREYHAWK North America

Service Contract # 50813C031." The amount of the re-procurement contract was $58,800.00. (See copy of re-procurement contract, "Order for Supplies or Services, Order No. 501815M158", attached.)

We also provided a copy of Cullion's proposal to F&W, dated May 4, 2005, upon which you had hand-written "extra work" for his review and comments. Mr. Murphy indicated that he could not verify these items as extra work in your subcontract with WCI because he was not privy to that subcontract, but he affirmed that those items were part of the remaining work that F&W re-procured Cullion to complete.

Our review of your subcontract with WCI does not indicate that these items were an exception to your subcontract, therefore, we have determined that they were part of the subcontract work that you did not complete for WCI. As a result, we have deducted the full amount of $58,800.00 from your original subcontract amount in our analysis. The calculation results in the amount due indicated above, $13,497.60 including retainage, which was the amount shown in our previous analysis.

We must remind you that you have not clearly presented documentation to support the White & Carr change orders by submitting approved authorization by White & Carr to perform the change order work and/or proof that the work was actually performed. Also, note that as part of this settlement offer, we have approved, pending our right to request additional documentation, change orders 6 through 11.

While the amount of this settlement is less than you have claimed, we have determined this to be the correct amount of your claim. If you agree to accept this amount, please execute the enclosed Release Form and return the properly executed original to my attention at the address indicated below.

Upon receipt of your executed original executed Release, GREYHAWK will forward you the check, which we have in our file.

In addition to the amount of the Surety's settlement check, Mr. Murphy has indicated that F&W will negotiate with Cullion directly to reach a settlement for additional funding for Ninigret Gravel that was not available as anticipated by F&W. This appears to be in the category of "materials to be provided by the Owner", which were not provided. Mr. Murphy had indicated that in order for F&W to consider your request for additional funding for having provided a replacement for the Ninigret Gravel, he will need you to breakout your amount for the Ninigret Gravel. Please contact Mr. Murphy directly on this matter.

GREYHAWK North America

Mr. Murphy also indicated that Cullion performed all of its work satisfactorily, and completed all of the work. No O&M manuals were required, so your retainage can be released at this time.

This is a final offer of settlement that is written with a full and complete reservation of rights and defenses; nothing herein shall be deemed to be an estoppel, waiver, or modification of any of the Surety's rights or defenses, and the Surety hereby reserves all of its rights and defenses under any other agreements, contracts, bonds, or applicable law.

Very truly yours,
**GREYHAWK North America, L.L.C.**

Joseph G. Iantuono

Joseph G. Iantuono, P.E.

Enclosure: Fish & Wildlife's Re-procurement Order
Final Release, Warranty and Assignment
Copy of Surety's Check #81567474

cc: Gregory S. Arnold, Esq., The Hanover Insurance Co.
Richard Anastasio, P.E., GREYHAWK North America, LLC

# Final Release, Warranty and Assignment

| | |
|---|---|
| **Principal:** | **White & Carr, Incorporated** |
| **Obligee:** | **US Department of Interior** |
| **Project:** | **Administration/Visitors Center Rhode Island National Wildlife Refuge Complex** |
| **Surety:** | **The Hanover Insurance Co.** |
| **Bond No.:** | **1701069** |
| **Claim No.:** | **23666** |

**Cullion Excavating, Corp., (Claimant)** acknowledges payment by **The Hanover Insurance Co.** (Surety) of the amount of **Thirteen Thousand Four Hundred Ninety Seven 60/100 dollars ($13,497.60).** The Claimant, on behalf of itself and its successors and assigns, releases and discharges the Surety and GREYHAWK North America, LLC (Authorized Agent) of and from any and all liability, claim, action, cause of action, suit, damage and demand that the Claimant has or may have in connection with the Project, the Bond, and any claim on the Project or Bond.

The Claimant **represents and warrants that the labor and/or materials constituting the claim was supplied to the Principal and is unpaid;** the amount noted above is correct, due and owing; and that the Claimant owns the claim and all rights thereto. Claimant does also certify that all said labor and materials and supplies for which the claims were made were incorporated in the Project and that Claimant has fully paid and discharged all claims against it for labor performed and materials furnished in connection with the Project and does hereby agree to release, indemnify, defend, hold harmless, and discharge the Surety and its Authorized Agent from any and all liens, claims, causes of action, damages and demands of every kind, character and description which Claimant may have for all labor performed and for all materials and supplies furnished in connection with the referenced Payment Bond issued by the Surety.

The Claimant sells, assigns, transfers to the Surety, its successors or assigns, all of the Claimant's rights, title and interest in and to the claim as set forth above, and any judgment that has been recovered on the claim. The Claimant appoints the Surety as its true, lawful and irrevocable attorney for the purpose of demanding, receiving and enforcing payment of this assigned claim, and agrees to fully cooperate with the Surety in enforcing its rights under such claim. At its own expense, the Surety may sue for and on the claim, either in its own name or in the name of the Claimant. The Claimant agrees to execute such further documents as may be reasonably necessary to affect the assignment and transfer of Claimant's rights to the Surety and any action of the Surety thereon.

In consideration of this payment, **Claimant agrees to repair, replace and/or complete all existing non-conforming, unacceptable and/or punch list work in accordance with the requirements of the Purchase Order/ Subcontract and the Contract. Claimant further agrees to honor all guaranty and warranty obligations.**

The undersigned warrants and represents that he/she is duly authorized to execute this document and bind the Claimant to the promises made herein.

This Final Release, Warranty and Assignment becomes effective upon Claimant's receipt of a check in the amount of ($13,497.60) from **The Hanover Insurance Co.**

Dated:____________________, 2005

**CLAIMANT: Cullion Excavating, Corp.**

Signature: ____________________

Print Name: ____________________

Title: ____________________

Signed, subscribed and sworn to before me, a Notary Public in and of the State of ______________, County of ____________, this _____ day of _______________, 2005

____________________________
Notary Public

My Commission Expires: ____________________
(Affix Stamp and/or Seal Here)

[FINAL RELEASE]
Revised Form 6/1/05

