**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA FOR THE USE OF CULLION EXCAVATING CORP., Plaintiff | : | |
| v. | : | C.A. No. 06-341S |
| WHITE & CARR, INC., AND THE HANOVER INSURANCE COMPANY, Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO HANOVER INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, The United States of America for the Use of Cullion Excavating Corporation ("Cullion"), respectfully submits this Memorandum of Law in Support of its Objection to the Motion for Summary Judgment (the "Motion") filed by The Hanover Insurance Company ("Hanover"). Contrary to Hanover's assertion, the Miller Act statute of limitations does not bar Cullion's suit. As a result, the Motion should be denied.

**Factual Background**

In or around the summer of 2003, the United States Department of the Interior, Fish and Wildlife Service ("Interior Department"), commenced a program for the construction and/or renovation of the Administration and Visitor's Facility at the Rhode Island National Wildlife Refuge in Charlestown, Rhode Island (the "Project"). On August 7, 2003, the Interior Department entered into a contract with Defendant White & Carr, Inc. ("White"), whereby White agreed to serve as the general contractor for the Project. *See*, Hanover's Statement of Undisputed Facts, ¶2. On August 12, 2003, Hanover, as surety, issued payment bond number 1701069 (the "Bond"). *See*, Exhibit C

to the Affidavit of Gregory S. Arnold, submitted in Support of Hanover's Motion. The Bond was in the penal sum of $2,458,000.00. *Id*.

Cullion is an excavating subcontractor with its headquarters in Cranston, Rhode Island. *See*, Affidavit of Mark Hoffer ("Hoffer Aff.,"), attached hereto as Exhibit A, at ¶3. On or about November 19, 2003, Cullion and White entered into a subcontract whereby Cullion agreed to perform the site work for the Project for the sum of $100,500.00 (the "Subcontract"). Hoffer Aff., ¶4. Cullion performed extra work for the Project pursuant to change orders agreed to between Cullion and White. Hoffer Aff., ¶5. The change orders were in the total amount of $56,108.00. Hoffer Aff., ¶6. Therefore, the total adjusted Subcontract price was $156,608.00. Hoffer Aff., ¶7. White paid Cullion $78,446.40 for its work on the Project. Hoffer Aff., ¶8.

The Interior Department terminated White as general contractor by letter dated April 8, 2005. *See*, Hanover's Statement of Undisputed Facts, ¶7. Subsequently, the Interior Department and Cullion entered into a new agreement whereby Cullion completed the work outstanding under the Subcontract, and performed additional work beyond the scope of the Subcontract and the change orders. Hoffer Aff., ¶¶ 9-10.[1] The new agreement with the Interior Department had an original value of $58,800.00 total; $37,600.00 for Cullion to complete its scope of work under the adjusted Subcontract, and $21,200.00 for the additional work. Hoffer Aff., ¶11. All of Cullion's work, under both the Subcontract and the subsequent re-procurement contract with the Interior Department,

---

[1] Cullion's proposal to the Interior Department, dated May 4, 2005, specifies which of the work under that agreement was within the scope of the Subcontract and which was in addition thereto. A copy of this proposal is attached as Exhibit 1 to the Hoffer Aff.

was for the Project. Hoffer Aff., ¶12. Cullion's last day of work for the Project was August 1, 2005. Hoffer Aff., ¶13.

On July 26, 2006, Cullion filed a complaint under the Miller Act against Hanover and White for $40,561.60, the balance due under the Subcontract. White did not answer or otherwise responsively plead to this suit, and the Court entered default against it on June 11, 2007. On information and belief, White has gone out of business. Hanover now moves the Court for summary judgment.

**Legal Argument**

In this case, Hanover is entitled to summary judgment only if it can show that there are no genuine issues of material fact for trial, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Barrett Paving Materials, Inc. v. Continental Ins. Co.*, 488 F.3d 59, 63 (1st Cir 2007). For the purposes of this Motion, there are no disputes as to any material facts. The legal issue facing the Court is this: does the statute of limitations period commence when the claimant last provides labor or materials for a discrete contract on a project or when the claimant last performs work or provides material for the project as a whole? Hanover urges the former. But, the plain language of the Miller Act and its interpreting caselaw clearly establish that the statute of limitations commences on the last day on which a subcontractor provides any labor or materials to a single project. Since Cullion last provided labor and materials to the Project on August 1, 2005 and it filed suit on July 26, 2006, Hanover's Motion should be denied.

Congress enacted the Miller Act to provide security for subcontractors and suppliers on public construction contracts who are unable to encumber government

property with a mechanics' lien. *F.D. Rich Co. v. U.S. ex rel. Industrial Lumber Co.*, 417 U.S. 116, 122 (1974). "The Act is 'highly remedial' and entitled to a 'liberal construction.'" *U.S. ex rel. G.E. Supply v. C&G Enterprises, Inc.*, 212 F.3d 14, 17 (1st Cir. 2000) (quoting *J.W. Bateson Co. v. U.S. ex rel. Bd. Of Trustees*, 434 U.S. 586, 594 (1978)). While the Miller Act does "protect contractors by establishing strict deadlines, that objective 'must take a back seat to the purpose of the overall statute, which is to provide recovery to suppliers who have provided materials but not received compensation.'" *G.E. Supply*, 212 F. 3d at 19 (quoting *U.S. ex rel. Water Works Supply Corp. v. Hyman Construction Co.*, 131 F.3d 28, 34 (1st Cir. 1997)).

Hanover's Motion is premised on the incorrect assertion that the statute of limitations began to run on the day that the Interior Department terminated White's contract. But, Hanover confuses the Miller Act's requirements regarding *who* may file suit with its requirements for *when* suit must be filed. It conflates two statutory sections, and engrafts onto the limitations period a requirement that does not exist. There is no support for this interpretation, and it should be rejected.

Hanover first invokes 40 U.S.C. §3133(b)(1), which states:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

Clearly, this subsection describes the proper *party* to a Miller Act suit. And, to be sure, Hanover is correct in that only those subcontractors and suppliers for

projects on which a Miller Act bond is provided may bring an action against the surety. But the subsection has no bearing on the statute of limitations issue.

The question of *when* a proper party[2] must bring an action is governed by a different subsection, which states that "[a]n action brought under this subsection must be brought no later than one year after the day on which *the last of the labor was performed or material was supplied* by the person bringing the action." 40 U.S.C. §3133(b)(4) (emphasis added). As numerous courts have held dispositive, discussed below, this subsection contains no reference to *the contract* under which the labor and/or materials were supplied. The contract under which the labor or materials are supplied is not relevant to the statute of limitations analysis. Hanover recognizes as much when it argues that §3133(b)(4) should be "read together and considered in context" with §3133(b)(1). *See*, Memorandum of Law in Support of Hanover's Motion, p. 6.

But the Fifth Circuit explicitly rejected the same strained construction in *General Electric Company v. Southern Construction Company*, 383 F.2d 135 (5th Cir. 1967). In that case, Southern was the general contractor on a project to improve an Air Force base in Louisiana. Mojave Electric Company subcontracted to perform the electrical work. General Electric provided materials to Mojave until Mojave went bankrupt and was defaulted. Mojave failed to pay General Electric for some of the supplies used in the project. *Id.* at 136. Thereafter, Southern performed a portion of the electrical work itself until it hired Evans-Jones Electric, Inc. to complete it. *Id.* General Electric supplied both Southern

---

2 There is no dispute that Cullion is a proper party in this case.

and Evans-Jones with electrical materials for the project. *Id*. General Electric subsequently filed suit under the Miller Act, more than one year after it provided to Mojave the materials that were the subject of its suit. *Id*. at 137. However, General Electric filed its suit *less* than one year after it provided materials to Southern and Evans-Jones for the same project. *Id*. Of course, the materials provided to Southern and Evans-Jones were provided pursuant to different contracts than the materials provided to Mojave, who had been defaulted. *Id*.

The Fifth Circuit found General Electric's claim timely. In so holding, it noted that the trial court read the statute of limitations subsection exactly as Hanover asks this Court to read it: "in pari material with Section 270b(a), [and] concluded that the words 'for which claim is made,' should be read into Section 270b(b) to carry out the true congressional intent. *We differ with that decision*." *Id*. at 138 (emphasis added).[3] It went on to hold "there is nothing ambiguous or doubtful about the [statutory] language, 'after the expiration of one year after the day on which the last of the labor was performed or material was supplied' by the claimant." *Id*. Since General Electric's claim was filed within one year of the last day it provided materials to the project – even though those materials were provided pursuant to different contracts and to different entities than the materials for which it brought its claim – its claim was timely. *Id*. at 139.

The First Circuit explicitly affirmed the holding and rationale of *General Electric* in *G.E. Supply*. There, C&G Enterprises served as the general contractor on a construction project owned by the U.S. Navy. 212 F.3d at 15. G.E. Supply

[3] The Miller Act was reorganized in 2002. Former Section 270b(a), as cited in *General Electric*, is materially the same as current Sections 3131(b)(1) and (b)(2). Former Section 270b(b), as cited in *General Electric*, is materially the same as current Sections 3131(b)(3) through (b)(5).

provided materials used in the project. According to the terms of the agreement between C&G and G.E. Supply, each shipment of materials constituted a separate contract. *Id.* at 16. G.E. Supply last provided materials in a shipment delivered to the jobsite on July 2, 1996. C&G failed to pay for some of the materials, and G.E. Supply brought suit on June 11, 1997. *Id.* C&G argued that, since each shipment was a separate contract, G.E. Supply's Miller Act claim was timely only as to those shipments made on or after June 11, 1996. *Id.*

The First Circuit flatly rejected the argument. The court clearly stated "[t]he text of [current 40 U.S.C. §3133(b)(4)] references *only the time that the last material* was supplied." *Id.* at 18 (emphasis added). "Hence, since G.E. Supply brought its Miller Act claim within the one-year period following the day on which it supplied the last material for the Project, its entire claim is timely." *Id.* The fact that G.E. Supply provided materials pursuant to two different contracts was not relevant. The operative date for the commencement of the statute of limitations period was the last date on which G.E. Supply provided *any* materials for the project. The overwhelming weight of authority supports this position. *See, e.g., U.S. ex rel. Aetna Drywall Contractors, Inc. v. Aetna Cas. & Surety Co.*, 725 F.2d 650, 651 (11th Cir. 1984) ("the date of the last furnishing [of labor or materials] is the appropriate date whether or not that furnishing is at issue in the suit."); *Alaska Helicopters, Inc. v. Whirl-Wide Helicopters, Inc.*, 406 F.Supp. 1008, 1010-1011 (D. Alaska 1976) (holding plaintiff's entire claim timely filed when project work provided under one subcontract was within one year period, but work under another subcontract for the same project was outside the one year period); *U.S. ex rel. Speer v. Dam-Co Contractors, Inc.*, 1986 WL 8483 at *2 (E.D. Pa. 1986) (unreported decision)

(holding plaintiff's claims for work provided on three buildings timely filed when the only work provided by plaintiff within one year of filing was for a fourth building on the same project, for which it had been paid).[4] Tellingly, Hanover cites no cases in which a court has adopted its intended construction of the Miller Act statute of limitations.

The parallels between this matter and the *General Electric* case are striking, and dispositive. Just as General Electric had, in this case Cullion has provided labor and materials to different entities, pursuant to different contracts, but for the same public construction project. Just as the defendant had, here Hanover urges this Court to hold that the statute of limitations period commences on the last day the materials are provided pursuant to a particular contract. And just as the Fifth Circuit ruled, in lockstep with subsequent rulings, this Court should apply the plain language of the Miller Act and hold that the statute of limitations commences on the last day labor or materials are provided for a project, regardless of the contract under which they were supplied or the party to whom they were supplied.

**<u>Conclusion</u>**

The law is abundantly clear that the Miller Act statute of limitations period commences on the last day the claimant provides any labor or materials for a project. There is no authority supporting Hanover's assertion that the limitations period commences on the last day labor or materials are supplied for a particular contract.

---

[4] Similar to the one year statute of limitations period, the Miller Act requires subcontractors and/or suppliers with no contractual relationship to the general contractor to provide notice within ninety days "from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material." 40 U.S.C. §3133(b)(2). In this related context, the First Circuit held that when materials are supplied under separate contracts, "the ninety-day notice period for *all* of the deliveries begins on the date of the *last* delivery to the project." *Water Works*, 131 F.3d at 34 (emphasis added).

Cullion last performed work for the Project on August 1, 2005. On that day, and no earlier, the statute of limitations period commenced. Since this complaint was filed on July 26, 2006, it was timely. The Motion should be denied.

Respectfully submitted,
CULLION EXCAVATING CORP.
By Its Attorneys,

/s/ Andrew S. Ullucci
Christopher C. Whitney #3261
Andrew S. Ullucci #7233
Little Medeiros Kinder Bulman &
Whitney, P.C.
72 Pine Street
Providence, Rhode Island 02903
(401) 272-8080
(401) 521-3555 (facsimile)
Email: cwhitney@lmkbw.com
aullucci@lmkbw.com

**CERTIFICATE OF SERVICE**

I, Andrew S. Ullucci, hereby certify that I have, on this 1st day of October, 2007, filed a copy of the within document in accordance with the ECF requirements for the United States District Court for the District of Rhode Island and, consequently, served a copy of the within document upon all counsel of record who have requested such ECF service.

I further certify that a true and accurate copy of the foregoing document was sent via regular U.S. Mail and via certified mail, return receipt requested, addressed to:

White & Carr, Inc.
c/o C. Cole
11 Broadway
11th Floor
New York, NY 10005

/s/ Andrew S. Ullucci